[Civ. No. 14911. Second Dist., Div. Three. Dec. 12, 1945.]

THE ROSICRUCIAN FELLOWSHIP (a Corporation), Appellant, v. THE ROSICRUCIAN FELLOWSHIP NON-SECTARIAN CHURCH (a Corporation) et al., Respondents.

Elmer J. Walther for Appellant.

Stewart, Shaw & Murphey for Respondents.

DESMOND, P. J.—On September 26, 1944, The Rosicrucian Fellowship, a corporation, filed an action in the Superior Court of Los Angeles County, joining as defendants The Rosicrucian Fellowship Non-Sectarian Church, a corporation, five

individuals named as directors and incorporators thereof, and The Rosicrucian Probationers Association.

On October 13, 1944, Judge Clarence M. Hanson, a member of the bench in Los Angeles County, acting upon a motion made by the defendants, ordered the venue of the cause changed to the Superior Court in and for the County of San Diego.

Upon this appeal it is contended that the granting of that order constituted an abuse of discretion for the reasons that the motion for change of venue stated no legal grounds, and "that there was no evidence before the trial court by affidavit, or otherwise, by which the trial court could justifiably determine that the convenience of witnesses and the interests of justice would be promoted by the change."

Section 392 of the Code of Civil Procedure, entitled "Venue of actions involving real property," provides that the county in which the real property which is the subject of the legal action is situated is the proper county for a trial of an action "For the recovery of real property, or of an estate or interest therein, or for the determination in any form, of such right or interest, and for injuries to real property." If, therefore, the trial judge found that the instant case presented a cause within the terms of section 392 just quoted, that in itself, of course, would furnish a sufficient ground for the transfer which he ordered, for section 397, Code of Civil Procedure, provides that the court on motion may change the place of trial "When the court designated in the complaint is not the proper court."

The order of October 13 does not state the grounds upon which the decision of the court rested, but it may be said that even though the case did not concern any interest in real property the court would still be authorized to order the change of venue if he found that the convenience of witnesses and the ends of justice would be promoted by the change. (Code Civ. Proc., § 397 (3).)

The pleadings and affidavits which were before the court are lengthy and detailed, but a consideration of their substance seems necessary in determining whether the court exercised a sound discretion in ordering the cause transferred.

According to the complaint, the plaintiff, The Rosicrucian Fellowship, was incorporated in January, 1913, by Max Heindel and his associates, and was empowered under its articles "To establish and maintain a nonsectarian church or

religious organization, with power to appoint, ordain and consecrate its ministers, to advocate, teach and disseminate the principles and teachings of the Christian Religion as interpreted by the Rosicrucian Philosophy sponsored by the ROSICRUCIAN FELLOWSHIP established at Oceanside, California, by MAX HEINDEL in 1912, and as set forth by and through his books and writings and those of MRS. MAX HEINDEL, and writings additional and supplemental thereto. . . .''

It is also alleged that Max Heindel founded the Rosicrucian Philosophy about the year 1908, and shortly thereafter organized The Rosicrucian Fellowship, an unincorporated association ''for the purpose of advocating, teaching and disseminating the principles of the Rosicrucian Philosophy as set forth and recorded in books and other literature prepared and published by said Max Heindel . . . that when said The Rosicrucian Fellowship was incorporated all of the property of said unincorporated association and all of the work of advocating, sponsoring, teaching and disseminating the principles of the Rosicrucian Philosophy, and the complete charge and responsibility thereof was transferred and turned over to said The Rosicrucian Fellowship, plaintiff herein, and has been carried on by said The Rosicrucian Fellowship, exclusively, ever since. . . . That the property and assets of plaintiff consist of land, a sanitarium, a printing plant, lodge building for the housing of guests, and miscellaneous buildings, furniture and fixtures, machinery and equipment, cash and securities, copyrights and other personal property, situated at Oceanside, California, of the value of in excess of $350,000.00.''

Paragraph VI of the complaint reads as follows: ''That by reason of the establishment of said business and enterprise by said Max Heindel and plaintiff as aforesaid, and by reason of the manner in which said Max Heindel and plaintiff have conducted, carried on and advertised the same, the name 'The Rosicrucian Fellowship' adopted and acquired by plaintiff as aforesaid has been so exclusively identified with plaintiff's said business and enterprise that it has acquired a secondary meaning, that is to say, that said name is solely indicative of plaintiff's business and enterprise, and its business and enterprise alone, and not of the business or enterprise of any other person, association or corporation, and that said name has come to mean the business and enterprise of plaintiff alone.''

The paragraph immediately following alleges that the defendants, ''on or about July 6, 1944, filed or caused to be filed in the office of the Secretary of State of California, articles of incorporation under the name 'The Rosicrucian Fellowship Non-Sectarian Church' which said articles set forth the names of Mrs. Max Heindel, Mrs. Irene Murray, Mr. George Schwenk, Mr. Arnold Mulli and Mr. Karl Mueller, defendants herein, as incorporators and directors of said The Rosicrucian Fellowship Non-Sectarian Church; that the principal place of business of said corporation is situated at the same place as that of said The Rosicrucian Fellowship, to-wit, Oceanside, San Diego County, California.

''That the powers and purposes of said The Rosicrucian Fellowship Non-Sectarian Church, among others as set forth in its articles of incorporation are substantially the same as the powers and purposes of said The Rosicrucian Fellowship, plaintiff herein, to-wit:

'' 'To organize, establish and conduct an international association of Christian Mystics and spiritual, ecclesiastical, non-sectarian church to carry on, disseminate and perpetuate the teachings of the principles of Rosicrucian Philosophy and spiritual concepts as given to its members and offered to the world by Max Heindel in his book entitled ''The Rosicrucian Cosmo-Conception or Mystic Christianity,'' and other supplemental writings of said Max Heindel and his wife Augusta Foss Heindel. . . .' ''

Paragraph VIII states, ''That notwithstanding the long and quiet use and enjoyment by plaintiff and its affiliates of the name and designation 'The Rosicrucian Fellowship,' defendants, well knowing that plaintiff and its affiliates were entitled to the sole and exclusive use and benefit of said name, did wilfully, wrongfully, unlawfully and with utter disregard of the rights of plaintiff and its affiliates, and against their wishes and without their permission, assume and appropriate to their own use and benefit on or about July 6, 1944, the name 'The Rosicrucian Fellowship Non-Sectarian Church,' with intent to mislead, deceive, confuse and defraud said 'The Rosicrucian Fellowship' and its students, probationers and disciples and the public, and to discredit plaintiff, and have used and now use said name, to-wit, 'The Rosicrucian Fellowship Non-Sectarian Church' to the great and irreparable damage and detriment of plaintiff and its affiliates.''

In paragraph IX appears the following: ''That defendants

have wrongfully, wilfully, unlawfully and with utter disregard of the rights of plaintiff and its affiliates represented and are continuing to represent to the students, probationers and disciples of plaintiff and the public that said new corporation is necessary in order to protect the property now held by plaintiff, and to protect the Rosicrucian Philosophy and teachings, all to the great and irreparable damage and detriment of plaintiff and its affiliates."

Paragraph XI alleges that a demand in writing was made by the plaintiff on the defendants to discontinue the use of their corporate name, "The Rosicrucian Fellowship Non-Sectarian Church" but the discontinuance has been refused.

The second cause of action alleges: "That the principal purpose of defendants in incorporating said The Rosicrucian Fellowship Non-Secretarian Church is to disseminate the teachings and principles of the Rosicrucian Philosophy as taught, sponsored and disseminated by said Max Heindel and said The Rosicrucian Fellowship, as set forth and contained in a book written and published by said Max Heindel entitled 'The Rosicrucian Cosmo-Conception or Mystic Christianity' and other writings of said Max Heindel and Mrs. Max Heindel, in substantially the same manner as said The Rosicrucian Fellowship has done and carried on and is doing and carrying on, for a period of in excess of thirty years, without the consent and against the will and wishes of plaintiff.

"That said book and other writings of said Max Heindel and Mrs. Max Heindel are copyrighted, and the exclusive right to the use thereof is vested in plaintiff; that the use thereof by defendants is and will be in violation of the rights of plaintiff, all to the great and irreparable injury, damage and detriment of said The Rosicrutian Fellowship and its affiliates."

A third cause of action alleges that the "defendants have wilfully, wrongfully and unlawfully interfered with, hampered and harassed said The Rosicrucian Fellowship, its officers and trustees in teaching, sponsoring and disseminating the Rosicrucian Philosophy."

Further allegations are to the effect that defendants have interfered with the meetings of study clubs organized by the plaintiff, that they unlawfully took from the plaintiff's office confidential records and files and have appropriated for their own use a mailing list of the students, probationers and disciples of the plaintiff; that the defendants have by circular

letters misrepresented the work carried on by the plaintiff and its officers and trustees; by insinuation and innuendo have represented that the trustees of the plaintiff are derelict in their duties and that the philosophy and teachings of The Rosicrucian Fellowship are in jeopardy; "that said defendants have wilfully and wrongfully represented to said students, probationers and disciples and other persons by circular letters, word of mouth and otherwise that said new corporation is a necessary instrumentality for carrying on the work and activities of said The Rosicrucian Fellowship, and by reason of said wrongful representations have induced a number of said students, probationers and disciples and other persons to send their free will offerings and financial support to defendants instead of to said The Rosicrucian Fellowship."

On the general allegations above summarized the plaintiff asked for equitable relief, including an accounting and payment by defendants to plaintiff corporation of all contributions and free will offerings received by the defendants. The court, by Judge Emmet H. Wilson, issued an order on the day that the action was filed, restraining the defendants temporarily from carrying on business under the name, The Rosicrucian Fellowship Non-Sectarian Church, from soliciting free will offerings or financial or other support, from using any of the copyrighted books and literature used by the plaintiff in disseminating the principles and teachings of the Rosicrucian Philosophy, from interfering in any way with the business and operations of the plaintiff, its officers, trustees, employees and agents and from interfering with the conduct or meetings, services, or lectures given by the plaintiff or under its directorship or sponsorship, or of its study groups or centers.

On October 6, 1944, the defendant corporation and the individual defendants filed, concurrently with their demand for change of venue and the notice thereof, a general and special demurrer and their joint answer to the complaint. As a special ground of demurrer they asserted that another action was pending between the parties for the same cause in the superior court of San Diego County, entitled George Schwenk, plaintiff, vs. The Rosicrucian Fellowship, a corporation, in which the right of said corporation to expel or excommunicate probationers and to deny probationers the right to attend

meetings and to participate in the ecclesiastical functions of The Rosicrucian Fellowship are in issue.

The answer admitted various allegations made in the complaint, denied others, and alleged particularly "that at all times until Max Heindel's death on January 19, 1919, Mr. and Mrs. Max Heindel, as members of the unincorporated church association, conducted all ecclesiastical and esoteric functions of The Rosicrucian Philosophy under the name, The Rosicrucian Fellowship. That at all times after the death of Max Heindel and until July 6, 1944 (the date upon which The Rosicrucian Fellowship Non-Sectarian Church was incorporated), Mrs. Max Heindel and other probationers and disciples of said unincorporated church association conducted all ecclesiastical and esoteric functions of The Rosicrucian Philosophy under the name 'The Rosicrucian Fellowship' as distinguished from the temporal purposes, powers and functions conducted by plaintiff corporation."

The answer set forth that on or about May 1, 1911, Mr. and Mrs. Heindel purchased the real property described in the plaintiff's complaint at Oceanside, California, and caused it to be improved with buildings, temples, dormitories, furniture, fixtures and other personal property and improvements, from funds contributed by Mrs. Heindel and the members of the unincorporated church association known as "The Rosicrucian Fellowship" and held the same in trust for the use, benefit and enjoyment of all the members of the unincorporated church association as beneficiaries. The answer admits and alleges that the plaintiff corporation was organized on January 10, 1913, by Mr. and Mrs. Heindel, and that on or about the year 1918 they conveyed all of the real property and improvements thereon to the plaintiff corporation in trust, as previously held by them, namely, for the use, benefit and enjoyment of the unincorporated church association, as beneficiaries, in the conduct of the ecclesiastical and esoteric functions of the Rosicrucian Philosophy.

The answer denied that any of the real or personal property of the unincorporated church association, or any of the ecclesiastical or esoteric work of teaching and disseminating the Rosicrucian Philosophy was transferred or conveyed to the plaintiff or was owned by the plaintiff corporation; also denied that the ecclesiastical and esoteric work of teaching has been carried on by the plaintiff corporation at any time prior to January 19, 1943. On this latter date a decision was

rendered by Honorable Charles C. Haines, judge of the Superior Court of the County of San Diego, in a case entitled *Weaver* v. *Meynke*. A copy of the judgment in that case is attached to the answer. By its decision the court held that "the persons who constitute the believers in and the followers of The Rosicrucian Philosophy constitute a Church known as The Rosicrucian Fellowship, as distinguished from The Rosicrucian Fellowship, a corporation, without any ecclesiastical organization or system of Church government." The court further held that the unincorporated church, as such, owns no real or personal property, that all of the real and personal property conveyed to or controlled by the corporation, The Rosicrucian Fellowship, is owned by that organization and "that said corporation holds all of said real and personal property as trustee for the members of said Church." The court also decreed that there is no spiritual head of the unincorporated church and that Mrs. Heindel is not the spiritual head thereof, but that she is a trustee of the corporation.

In that action and by the decision of the court, the relief sought by the plaintiffs "against the present corporate setup and for amendment to the Articles of Incorporation and By-Laws is denied" but the removal of Mrs. Heindel as president of the corporation by the trustees thereof in February, 1942, was held to be legal; further, that the use of certain funds for the purpose of meeting expenses in operating a sanitarium was not in accordance with the terms upon which a bequest was made to the corporation by a resident of New York. The court also declared that the members of the unincorporated church are beneficiaries for whom the corporation is trustee, and by its decree retained jurisdiction to make such orders as may be fit and proper with respect to the management of the sanitarium and restoration of funds, calling for a quarterly report to the court meantime by the board of trustees.

The answer alleges that the plaintiff corporation continued to exist and operate as a college or seminary of learning until January 19, 1940, when it amended its articles of incorporation to include purposes and powers of conducting a business of a church, but that during that time the plaintiff corporation confined its activities to the conduct of temporal and secular functions and the management of said properties as trustee, for the use, benefit and enjoyment of the members of the unincorporated church association. It is further alleged that after January 19, 1943, the date of Judge Haines' decree, the

plaintiff corporation, without the knowledge, consent or approval of the beneficiaries, by amendment to its articles and by-laws and the adoption of rules and regulations "attempted to usurp the ecclesiastical and esoteric functions of The Rosicrucian Philosophy, and to use the real property for the said purpose, and expelled and excluded members of the said church association from the use and enjoyment of the said real property."

The answer, as summarized in respondents' brief, "Admits the incorporation on July 6, 1944, of defendant corporation by the individual defendants, as members, and more than 400 other members of the unincorporated church association, for a twofold purpose: (1) of organizing the unincorporated church association into a permanent church corporation under Title XII, Part 4, Division First of the Civil Code of the State of California to conduct the ecclesiastical and esoteric functions of the Rosicrucian Philosophy at Oceanside, San Diego County, California, and (2) to protect the rights of its members, as beneficial owners of the right to use and enjoy said real property in the conduct of the said ecclesiastical and esoteric functions. That Mrs. Max Heindel was the sponsor thereof."

A cross-complaint was filed concurrently with the answer alleging that on or about August 8, 1909, Max Heindel and a group of people formed an unincorporated church institution under the name of "The Rosicrucian Fellowship." That on August 10, 1910, Max Heindel and the cross-complainant, Mrs. Max Heindel, then Augusta Foss, were married. That at all times thereafter, until the death of Max Heindel on January 6, 1919, he and Mrs. Heindel conducted, and at all times from January 6, 1919, to July 6, 1944, (the date upon which The Rosicrucian Fellowship Non-Sectarian Church was incorporated), Mrs. Heindel conducted a church composed of students, probationers and disciples of the Rosicrucian Philosophy in the state of California under the name of The Rosicrucian Fellowship. That the unincorporated church was at all times until October 3, 1943, without ecclesiastical organization or system of church government.

It is also alleged in the cross-complaint that Max Heindel's will, bequeathing all of his estate to his widow, was admitted to probate in the county of San Diego and that thereafter, on August 23, 1920, Mrs. Heindel executed a deed to the cross-defendant, The Rosicrucian Fellowship, a corporation,

in and to the real property now held by that corporation, "as Trustee, to be held in trust for the use, benefit and enjoyment of the said students, probationers and disciples, as members of the said church established by Max Heindel in 1909, and at all times known as The Rosicrucian Fellowship."

A further allegation asserts, "That on October 3, 1942, the individual cross-complainants, and more than twenty other students, probationers and disciples filed written Articles of Association of The Rosicrucian Probationers Association. That from October 3, 1942, until July 7, 1943, more than four hundred students, probationers and disciples of the said church joined and became members of The Rosicrucian Probationers Association. That in and by the Articles of Association of the Rosicrucian Probationers Association, the following purposes were stated: (1) To organize the said church institution; (2) To establish the church government; (3) To adopt rules, regulations and orders regarding the ecclesiastical functions of the said church; (4) To designate Mrs. Max Heindel as the spiritual leader of the said church with complete jurisdiction over all esoteric correspondence and ecclesiastical instruction." That the Rosicrucian Probationers Association continued to operate and exist until July 6, 1944, when all of its members, together with the cross-complainants, organized The Rosicrucian Fellowship Non-Sectarian Church as a corporation.

It is further alleged that at all times from and after January 19, 1943 (the date of Judge Haines' decision), the cross-defendants have taken active steps and performed acts to discourage students, probationers and disciples as believers and followers of the Rosicrucian Philosophy from organizing a church institution. That the cross-defendants caused letters to be written to students, probationers and disciples containing false representations as to the purpose of the cross-complainants in organizing The Rosicrucian Probationers Association and in organizing The Rosicrucian Fellowship Non-Sectarian Church. That the cross-defendants caused an amendment to be made in the by-laws of The Rosicrucian Fellowship, a corporation, to provide for the adoption by the trustees of rules and regulations for the admission and expulsion of students, probationers and disciples. That a copy of the rules and regulations was mailed by the cross-defendants to each of the students, probationers and disciples of the church institution known as The Rosicrucian Fellowship.

That a letter also was mailed to them representing that it was necessary and a condition precedent to their remaining students, probationers and disciples that they agree to be bound by the rules and regulations. That thereafter the cross-defendants removed and suspended the cross-complainant, George Schwenk, who had been a probationer for more than eight years previously.

"That the cross-defendants, and each of them, have refused and excluded students, probationers and disciples who have sought to or taken any steps to organize the said church as aforesaid, from the use and enjoyment of the real property, buildings, improvements, fixtures and personal property located at Oceanside, County of San Diego, State of California. That each and all of said students, probationers and disciples owned and are entitled to the right of use and enjoyment of said real property, buildings, improvements, furnishings and fixtures therein and thereat."

The cross-complaint then goes on to state that each of the cross-complainants "claim and assert that they, as students, probationers and disciples and as members of the Rosicrucian Fellowship, a church institution unorganized prior to July 6, 1944, and the Rosicrucian Fellowship Non-Sectarian Church, a church corporation, composed of students, probationers and disciples as believers in the Rosicrucian Philosophy as founded by Max Heindel in the year 1909, are entitled to the use and enjoyment of the said real property, buildings, improvements, fixtures, furnishings, printing plant, and all other personal property of every nature and description in and upon said real property as beneficiaries without molestation or interference from the cross-defendants, or any of them.

"That the cross-defendants, by the adoption of said Rules and Regulations, or otherwise, have no power or authority to suspend or expel any of said students, probationers or disciples, or to exclude any of said students, probationers or disciples from such right of use and enjoyment of said assets, or any of them.

"The cross-defendants, and each of them, claim and assert that they have by the amendment of said By-Laws, and by the adoption of the said Rules and Regulations, the right to suspend or expel students, probationers and disciples, who shall become a member of the Rosicrucian Fellowship Non-Sectarian Church, with or without cause, or whenever in the opinion of the trustees suspension or removal of any student, probationer

or disciple would be for the best interests and welfare of the Rosicrucian Fellowship, a corporation, and to exclude any student, probationer or disciple from the right of use and enjoyment of the said assets held by the said corporation in trust.''

Other matters set up in the cross-complaint relate to the right to use copyrighted insignia and literature, and there is attached to the cross-complaint a copy of an agreement dated October 23, 1931, and an amended agreement alleged to have been executed in November, 1935, between Mrs. Heindel and The Rosicrucian Fellowship, a corporation, providing that she shall receive compensation for the use of copyrights for the duration of her lifetime and an annuity of $1,500 payable at the monthly rate of $125. The agreements also provide that Mrs. Heindel shall have living quarters upon the grounds and at the headquarters of plaintiff for life and in addition sustenance at its cafeteria for life.

It was alleged in the cross-complaint that the cross-defendants had padlocked the doors of the cottage at Mt. Ecclesia where Mrs. Heindel had been living.

By the prayer of the cross-complaint the court was asked to ''fix, allow and declare the rights and interests of cross-complainants in and to said real property, buildings, improvements, fixtures, furniture and other personal property therein and thereat, and in and to the right to the use and enjoyment of the said real and personal property'' and the prayer sought other equitable relief.

At the time of the hearing upon the motion for change of venue various affidavits were before the court, one by Mrs. Heindel, entitled an affidavit of merits, stating in great detail matters to which we have adverted in our remarks upon the pleadings, calling attention particularly to Judge Haines' decision to the effect that the plaintiff corporation holds all of the assets of the Rosicrucian Philosophy, real, personal or otherwise, as trustee for the benefit of the individual defendants and students, probationers and disciples of the Rosicrucian Philosophy; further that ''the Court determined that the plaintiff corporation had not exercised and had no power to exercise any control over the Ecclesiastical functions of the Rosicrucian Fellowship, and that the Ecclesiastical functions of the Rosicrucian Fellowship was vested entirely in the students, probationers and disciples, who were unorganized.''

Mrs. Heindel pointed out in this affidavit that if the cause were tried in Los Angeles County it would be necessary to

procure certified copies of exhibits, judgment roll and the opinion of Judge Haines. She points out further, that all the transactions of the plaintiff corporation and of the defendants appear from the pleadings to have taken place in the county of San Diego, and that all the property involved, real and personal, is located in that county.

This affidavit closes with the statement that the interests of justice require that the trial be transferred to San Diego County.

An affidavit of Juanita Emerick, vice-president of The Rosicrucian Fellowship, a corporation, filed in opposition to the motion for the change of venue, asserted that the convenience of witnesses required that the trial be held in Los Angeles County; that many witnesses reside in the county of Los Angeles and it would be inconvenient and a hardship for them to travel to and remain in San Diego during the progress of the trial; ''That the County of Los Angeles is the proper county for instituting said action and for the trial thereof; and that the convenience of witnesses and the interests of justice require that the trial of said action be held in Los Angeles County, California.''

An affidavit by Adam Knieling presents similar matters.

A joint affidavit in opposition to the issuance of the temporary injunction which was requested by the plaintiff corporation was signed by Mrs. Heindel and George Schwenk, one of the defendants in this action. It was served on October 11th upon counsel for appellant and filed that same day, two days prior to the hearing and argument before Judge Hanson. It relates to many matters covered by the pleadings and states that Mrs. Heindel at the date of filing was 79 years of age, that she had spent all of her time and personal fortune of more than $25,000 in building up The Rosicrucian Fellowship, not only in its temporal, but in its esoteric and ecclesiastical functions, as well. That during the lifetime of her husband, Max Heindel, she worked constantly with him and since his death in 1919 has written numerous books, pamphlets, monthly esoteric letters to students, has lectured and delivered sermons on the Rosicrucian philosophy and religion; that she is recognized by hundreds of the students, probationers and disciples, as the spiritual leader of the ecclesiastical functions of the church in succession to her deceased husband; that she caused the defendant corporation, The Rosicrucian Fellowship Non-Sectarian Church, to be organized on July 6, 1944; that she

is becoming more infirm from old age, as well as from injuries suffered from an automobile accident in 1942; that she will be unable to conduct the organization of the church government for more than a few months and if the temporary injunction prayed for is granted the effect would be to suspend the business of the church.

While the demand for the change of venue merely asked that the place of trial be transferred to the county of San Diego, the notice of the motion served and filed concurrently with the demand alleged as grounds for the desired action that all the acts complained of in the first and third causes of action were performed by the defendants, if at all, in the county of San Diego; that all contracts or licenses mentioned in the second cause of action were made in or to be performed in that county; that any obligation or liability of the defendants arose in the county of San Diego. Further, that the plaintiff corporation and the defendant corporation each has its principal place of business in the county of San Diego, and all contracts, books, minutes, records and files of both corporations are regularly kept in that county; that approximately 40 exhibits had been offered in evidence in San Diego County in the action entitled *Weaver* v. *Meynke, The Rosicrucian Fellowship, a corporation, et al.;* that the judgment roll and the opinion of Judge Haines, consisting of 83 pages, are all on file in the office of the county clerk of San Diego County; that all the records, papers, documents and files will be necessary in the trial of the instant action and that the convenience of witnesses requires that the trial be held in the county of San Diego.

The notice also recites that a dispute has arisen between the plaintiff corporation and the moving defendants as to the rights of the defendants as beneficiaries having ecclesiastical and esoteric powers to use and enjoy the real property, buildings, improvements, and facilities, located in the county of San Diego and held by the plaintiff corporation; that they intend to file a cross-complaint in the pending action; "that said issue can only be brought and tried in San Diego County where the said real property and assets are located."

The appellant contends that this is a transitory action, and therefore that section 392, Code of Civil Procedure, relating to actions in which the rights or interest in real property are to be determined has no application; further, that "in the absence of any language in the motion that the

ends of justice will be promoted by the change it is apparent that the motion is fatally defective."

The respondent takes the position that the court did not abuse its discretion in granting the motion without a statement therein of specific grounds, relying upon the fact that the pleadings and affidavits presenting contending issues were before the court and upon the rule that "all presumptions upon appeal are in favor of the order of the court as made changing place of trial," (*Gordon* v. *Perkins,* 203 Cal. 183, 186 [263 P. 231]) ; stating further upon the same authority that "Where there is substantial evidence to support the action of the trial court, an order based upon conflicting affidavits either in granting or refusing a change of venue will not be disturbed on appeal."

In answer to the contention by the appellant that section 392, Code of Civil Procedure, does not apply, the respondent points out that "the affidavits of Mrs. Max Heindel show, without any contradiction by plaintiff corporation, that an actual controversy exists between plaintiff corporation and defendant corporation. That plaintiff corporation claims the exclusive ownership and right of possession of real and personal property in the conduct of ecclesiastical functions as against the claims and rights of its beneficiaries of the said trust property to possess, use and enjoy the same in carrying on the ecclesiastical functions of that religious organization." Support for this view arises from the frequent reference in the pleadings to the real estate in Oceanside where the interests of the Rosicrucian organizations center.

It will be remembered that the complaint itself states that the principal place of business of the defendant corporation is situated at the same place as that of the plaintiff corporation, The Rosicrucian Fellowship, to wit: Oceanside, San Diego County, California, and it appears from the record that George Schwenk is resisting an order of removal and suspension, delivered by plaintiff corporation, as an invasion of his right to use beneficially the real property held by the plaintiff. If he is successful in prosecuting that case he may not be expelled from the premises while exercising his beneficial right to the use thereof. Nor may any other student, probationer or disciple similarly situated be expelled, and there seems to be no question that there would be involved in each such case the determination of a right or interest in real property. An order of suspension or expulsion from church

property by church authorities, like an order of excommunication, is an ecclesiastical function, and in this case it relates directly to real estate.

The answer and the cross-complaint, both of which were before Judge Hanson at the time he made his decision, refer occasionally to the beneficial rights or interests of the individual respondents in the real property held by the plaintiff corporation, as trustee.

We feel, therefore, that in a broad consideration of the subject, the court may well have concluded that the transfer of this action to San Diego County was justified under the terms of section 392, Code of Civil Procedure. In addition, it may be said that the affidavits before the court raised a question concerning the convenience of witnesses and promotion of the interests of justice, and the decision to grant the motion may have been based upon the court's consideration of those grounds, in which case we are of the opinion that no error could be validly charged against the order transferring the cause to San Diego.

The Emerick affidavit, filed in opposition to the motion, stated "that the convenience of witnesses and the interests of justice require that the trial of said action be held in Los Angeles County."

Other affidavits presented a different view, namely, that the convenience of witnesses would be promoted by transferring the cause to San Diego County.

It was incumbent upon the trial judge to determine, after hearing the argument by both sides, which allegation as to convenience of witnesses was correct. It is quite apparent that he concluded that the convenience of witnesses, as well as the interests of justice would be promoted by his affirmative action on the motion. We cannot say, all the circumstances of the case being considered, that his disposition of the matter constituted an abuse of the discretion vested in him.

The order is affirmed.

Shinn, J., and Wood, J., concurred.

A petition for a rehearing was denied January 8, 1946, and appellant's petition for a hearing by the Supreme Court was denied February 7, 1946.